IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM BLAKE | * | |
| Plaintiff | * | |
| v. | * | |
| | | Civil Action No. L-07-CV-0050 |
| BALTIMORE COUNTY, MARYLAND, *et al.* | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT BALTIMORE COUNTY'S
### ANSWERS TO PLAINTIFF'S INTERROGATORIES

Defendant Baltimore County, Maryland, has not yet completed discovery or its internal gathering of facts and documents relating to this action and therefore reserves the right to revise, correct, add to, supplement, and clarify the responses set forth below. Accordingly, Baltimore County reserves the right to supplement or amend its answers and objections. Subject to the general and specific objections set forth below, Baltimore County answers as follows in response to each individual request.

Baltimore County, by its undersigned attorneys, hereby responds to plaintiff's interrogatories as set forth below. The word usage and sentence structure is that of the attorneys who in fact prepared these answers and said language does not propose to be the exact language of the executing party.

## **Introduction and General Objections**

A.  These answers and objections are made without waiver of, and with reservation of:

(i)  All objections as to competency, relevancy, materiality, privilege and the admissibility of each answer, including documents produced, and the subject matter thereof, as evidence for any purpose and any further proceeding in this action, and in every other action;

(ii)  The right to object to the use of such responsive answer, or the subject matter thereof, on any ground in any further proceeding in this action (including trial thereof), and in every other action;

(iii)  The right to object on any grounds at any time to a demand or question for further responses (including document requests) to these interrogatories or any other request to produce information or other discovery proceedings involved in or relating to the subject matter of these interrogatories; and

(iv)  The right, at any time, to revise, correct, add to, supplement or clarify any of the answers contained herein.

The following answers (and any further answers or documents produced pursuant to these interrogatories or their subject matter) are made expressly without acknowledgement of materiality or relevance of the interrogatories, or that

the interrogatories are in any way reasonably calculated to lead to the discovery of admissible evidence.

B.     Baltimore County objects to each and every question that seeks the disclosure of information or the production of information containing information that is:

(i)     Subject to the attorney-client privilege or other applicable privilege or protection;

(ii)    Trial preparation material under the Maryland Rules of Civil Procedure; or

(iii)   Confidential information concerning Baltimore County or those with whom Baltimore County does business, did business, or contemplated doing business, on the grounds that the privileged and confidential material is exempt from discovery and the trial preparation material may be discovered only upon fulfillment of the requirements set forth in the Maryland Rules. Due to the confidential nature of virtually all the information requested, Baltimore County will produce information only subject to a mutually agreeable confidentiality and protective order limiting the access to and use of the information to be produced.

C.     Baltimore County objects to the interrogatories to the extent they seek information already in plaintiff's possession, readily available from public sources, or in the possession of third parties. Baltimore County further objects to the

interrogatories to the extent that discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

D. Baltimore County objects to the interrogatories to the extent that they request a production of information already produced in this action on the grounds that such information is equally available to plaintiff and that the interrogatories relating thereto are accordingly cumulate, duplicative, overly broad and burdensome.

E. Baltimore County objects to the production of information obtained by Baltimore County, its attorneys, or its agents from third parties in connection with this, or any other litigation.

F. Baltimore County objects to the interrogatories to the extent that they seek information that neither refers nor relates to the parties' relationship with each other or to any of the issues in this case.

### Objections to Definitions

A. Baltimore County generally objects to the definitions on the grounds that these definitions:

(i) Are vague, ambiguous and over broad, and therefore, burdensome and oppressive;

-4-

(ii) Encompass information immune from discovery under, among others, the attorney-client privilege and work-product rule;

(iii) Involve non-parties as well as persons and entities having no direct involvement with, or first hand knowledge of, the events at issue; and

(iv) Require, at great expense and without countervailing justification or regard to the interest of justice, the detailed interviews of numerous individuals and an unreasonably massive search for virtually unlimited numbers of information.

B. Baltimore County objects to the definitions on the grounds that the plaintiff does not identify what is intended by the terms "officers," and "employees" nor the terms "agents" and "representatives," thereby rendering it impossible to determine whether a given information is responsive.

C. Baltimore County specifically objects to the definitions to the extent that these definitions may require or envision information disclosed by, or on behalf of the non-party to this action.

D. Baltimore County further objects to the interrogatories insofar as they seek the production of information that is not in the possession of, custody, or control of any party upon which the interrogatories were served.

### Objections to Instructions

A. Baltimore County objects to the instructions to the extent it would

require the production of information covering from the beginning of time to the present on the grounds that the time frame of the interrogatories:

    (i)    Is not limited to, and indeed far exceeds, the period of time relevant to the matters at issue;

    (ii)    Is overbroad and therefore, burdensome and oppressive;

    (iii)    Would license a discovery "fishing expedition" into irrelevant material that will not lead to the discovery of admissible evidence.

B.    Baltimore County objects to the instructions which request that information be produced in any particular way. Baltimore County will produce responsive information in the manner required by Maryland Rules.

C.    Baltimore County objects to the instructions as overbroad, burdensome and oppressive insofar as it may encompass:

    (i)    Documents that have left Baltimore County's possession, custody, or control or have been discarded in the ordinary course of business;

    (ii)    Documents whose existence where identity cannot be determined with a reasonable degree of inquiry; or

    (iii)    Documents that were transferred to other persons.

D.    Baltimore County further objects to the instructions insofar as it exceeds, or differs from, the requirements of the Maryland Rules of Procedure.

*    *    *    *    *

Subject to the foregoing general objections together with the specific objections set forth above, Baltimore County will provide for inspection and copying by plaintiff documents responsive to plaintiff's interrogatories. Baltimore County will be making documents available in the interest of expediting discovery and despite Baltimore County's belief that many of these documents are neither material nor relevant to the case at bar, nor reasonably calculated to lead to the discovery of admissible evidence.

### Answers and Objections to Plaintiff's Interrogatories:

Answers responsive to plaintiff's interrogatories shall be provided subject to the foregoing objections and to the specific objections noted below and except as may be subject, in whole or in part, to an attorney-client or other privilege.

### ANSWERS

**INTERROGATORY 1**: *State all facts you contend support the allegation that between August 2006 and the present a need arose to investigate or inquire into the ability of plaintiff Blake to perform the essential functions of his job.*

**ANSWER 1**: On August 31, 2006, Detective Blake testified before the County Board of Appeals in *In the Matter of Phillip Crumbacker*, CBA No. 06-010, and stated he experienced "an onset temporal lobe seizure" in the spring of 1996.

**INTERROGATORY 2**: *State all facts you contend support the allegation that, between August 2006 and the present, a basis arose for inquiring into the medical condition of plaintiff Blake, and for*

-7-

*ordering plaintiff Blake to submit to fitness for duty examination(s), EEG, and other medical testing.*

**ANSWER 2:** A basis arose when Detective Blake's chain of command learned of his history about the "onset temporal lobe seizure" in the spring of 1996. This was learned against the backdrop that Officer Crumbacker had experienced a seizure on September 6, 2004, while driving a departmental vehicle, and had an accident. Officer Crumbacker was responding to a call in his police car while on I-695, crossed all lanes of traffic, went airborne, and crashed into a construction site. It was learned that this seizure was preceded by one on July 5, 2004, while at home. Police officers carry guns and badges and seizures could result in the officers not being able to protect themselves, other officers, and the public, as well as the violent people they meet in the course of their job. The job is stressful and the officers must have their wits about them, therefore, a fitness for duty exam was sought.

**INTERROGATORY 3:** *State all facts you contend support the allegation that, between August 2006 and the present, a basis arose for ordering plaintiff Blake to disclose and to authorize the disclosure of all medical records pertaining to any medical treatment he has received during his lifetime.*

**ANSWER 3:** Detective Blake's medical condition required evaluation and, to do one, past medical history appears to matter to those performing a proper medical examination.

-8-

<u>INTERROGATORY 4</u>:   *State all facts you contend relate to plaintiff Blake's participation or involvement in the matter of Officer Crumbacker's fitness for duty or disability retirement, including but not limited to complying with a subpoena to testify before the Board of Appeals.*

<u>**ANSWER 4**</u>:   As mentioned in the question, Detective Blake was subpoenaed.

<u>INTERROGATORY 5</u>:   *Describe in detail any concerns raised or complaints made by any employee or person regarding plaintiff Blake's fitness for duty or ability to perform his essential job functions, between August 2006 and the present, and at any time during his employment.*

<u>**ANSWER 5**</u>:   On or after August 31, 2006, concerns were raised regarding Detective Blake's fitness for duty or ability to perform his essential job functions. The concerns involved whether Detective Blake would have a second seizure, as Officer Crumbaker had had a second seizure, and the exposure of the department in not investigating such a likelihood.

<u>INTERROGATORY 6</u>:   *Describe in detail any instance in which the Baltimore County Police Department received or made a complaint about, or took any personnel action, based on any aspect of plaintiff Blake's performance, including but not limited to his medical fitness for duty, at any time during his employment.*

<u>**ANSWER 6**</u>:   The one instance was learning of his history of a seizure in the spring of 1996 and whether it would affect his fitness for duty.

<u>INTERROGATORY 7</u>:   *State all facts you contend support the alleged business necessity, job-relatedness, or operational basis, for ordering plaintiff Blake to submit to fitness for duty examination(s),*

*EEG, or other medical testing, between August 2006 and the present, and at any time during his employment.*

**ANSWER 7:**   In three sentences, the business necessity was the potential of exposure to liability to third person private citizens or high-risk individuals he may be exposed to during the course of his duties, himself, or other officers, should Detective Blake experience another seizure while at work. Baltimore County believed it was permitted to undertake a precautionary measure to find out the extent of his seizure or seizures. The operational basis was and is whether he was fit for duty to be a police officer on a full-time basis as opposed to a light-duty basis.

More fully, the September 2004 accident by Officer Crumbacker suggested that one seizure may (and in that instance did) lead to a second seizure. Thus, as to Officer Blake, Baltimore County was not addressing a static hypothesis.

The ADA does not require Baltimore County to forego fitness examinations for one of its police officers and wait until disaster strikes. Baltimore County's understanding of 42 U.S.C. § 12112(d)(4)(A) allows it to make inquiry of the nature or extent of being or not being prone to seizures. Baltimore County understands that an employee such as Officer Blake may not appreciate being examined. Baltimore County had and has no intention of violating the law and causing Officer Blake unnecessary or avoidable concern but medical exams are

-10-

permitted if job related and "consistent with business necessity." The EEOC Compliance Manual explains that a medical evaluation for public safety jobs that address specific concerns are permitted. Officer Blake (it is hoped he would agree) has a public safety job. Would he, having testified that he had had seizures, be more prone than the average person to a second seizure? The Baltimore County Police Department decision-makers lack a medical degree and to the County this seems like a medical question. So, Officer Blake was asked (or was ordered) to undergo a fitness for duty evaluation. By doing so Baltimore County would have access to more information and thereby have the ability to make a sensible decision about the capacity to be a full-time police officer. Dr. Oroszlan requested the EEG and other medical information after his exam. *See* his report.

Baltimore County mentions that the Police Department has to test ten candidates in order to get one. The hiring process is very expensive. The Department doesn't want to see anyone leave and tries to make the job such that they want to stay until they do not have to work any more by, for example, the various benefits offered and yet the Police Department regards it as necessary to learn and better understand the question of seizures such that a medical doctor, knowing the job description, can inform the Department of information bearing on the question.

<u>INTERROGATORY 8</u>: *State all facts you contend support the alleged business necessity, job-relatedness, or operational basis,*

-11-

Case 1:07-cv-00050-BEL   Document 16-1   Filed 04/20/07   Page 12 of 20

*between August 2006 and the present, and at any time during his employment, for ordering plaintiff Blake to disclose and to authorize the disclosure of all medical records pertaining to any medical treatment he has received during his lifetime.*

**ANSWER 8:** The "business necessity" was that it was the Department's understanding from Dr. Oroszlan's report that past medical history as well as the results of any current medical evaluation are needed to arrive at a valid conclusion.

**INTERROGATORY 9:** *Describe in detail all meetings, discussions, or any communications, between August 2006 and the present, and at any time during his employment, regarding the decision to inquire into and to order plaintiff Blake to submit to fitness for duty examination(s), EEG, or other medical testing. Include in your answer the date, place, and identity of all participants or attendees.*

**ANSWER 9:** On August 31, 2006, Chief Sheridan contacted Major Russin, Colonel Johnson, and Colonel Kelly to discuss the information learned during the Board of Appeals hearing concerning Officer Crumbacker. It was learned that Detective Blake, Officer Ward, and Lieutenant Lauenstein had previously been diagnosed by a healthcare provider as having a seizure disorder. No medical records were submitted by any of the three or by the attorney. Officers Blake and Ward testified about it for example. As a result of this, the Chief ordered that all three undergo a workability evaluation to determine their current ability to perform the essential functions of their job. The caveat was that before implementing the order, it would be asked of and verified by Concentra that none

-12-

of the three had previously been examined by Concentra for seizure disorders and returned to full duty. On September 1, 2006, a meeting was held to discuss the implementation of the workability orders for Lieutenant Lauenstein, Officer Ward, and Officer Blake. In attendance were Colonel Ward, Colonel Johnson, Colonel Kelly, Major Burris, Major Russin, Lieutenant Eastridge, and Bob Wickless. After additional discussion between the Colonels and the Chief, it was communicated that the police powers of Lieutenant Lauenstein, were to be suspended at that time (Officers Ward and Blake's were not, as their situation was thought to be slightly different) but that the workability evaluations be scheduled on the earliest possible date and based on a post-evaluation opinion, the police powers issue would be revisited.

Pursuant to Fed. R. Civ. P. 33, further information can be obtained by reviewing defendants' response to your request for documents which have been produced on this same date.

> **INTERROGATORY 10**: *Describe in detail all meetings, discussions, or any communications, between August 2006 and the present, and at anytime during his employment, regarding the decision to inquire into and to order plaintiff Blake to disclose and to authorize the disclosure of all medical records pertaining to any medical treatment he has received during his lifetime. Include in your answer the date, place, and identity of all participants or attendees.*

> **ANSWER 10**: Baltimore County incorporates its answer to question 9, as the disclosure of medical records for a work evaluation helps to

-13-

assure that the evaluating doctor has access to pre-evaluation medical conditions revealed in the sought medical records. This saves time of the doctor and hence the County and saves taxpayer expense as the doctor can avoid re-learning the chart based on the requested records. Dr. Oroszlan wanted medical records from family doctors to document treatment after 1996, not any medical records "received during his lifetime."

> INTERROGATORY 11: *Describe in detail any meeting at which plaintiff's claims of discrimination, retaliation or illegal treatment were raised or addressed. Include in your answer the date, place, and identity of all participants or attendees.*

**ANSWER 11:** Baltimore County learned of the claim by way of counsel's letter dated September 6, 2006, to John E. Beverungen. Mr. Beverungen then communicated with Chief Sheridan. Discussions thereafter focused on whether the fitness for duty evaluations were "not being done for a legitimate business purpose." Because the Chief sought legal advice from Mr. Beverungen in his capacity as a professional legal adviser, all further communications related to that purpose were made in confidence by the Chief or at his direction and are at his instance permanently protected from disclosure by him or his legal advisor or delegate and are therefore protected by the attorney-client privilege.

> INTERROGATORY 12: *Describe in detail any training conducted by Baltimore County or the Baltimore County Police Department on*

*the subject of discrimination, disability discrimination, medical fitness for duty, or retaliation, between 2000 and the present.*

**ANSWER 12:** As this question relates to *Monell* liability and as defendants have pending a motion to bifurcate, Baltimore County respectfully declines to answer until required to do so as a result of that ruling. Without waiving the objection and in an attempt to accommodate, attached is Baltimore County Code Sections 4-8-101 and 102, Rules 12 and 15.

**INTERROGATORY 13:** *Describe in detail any measures taken by Baltimore County or Baltimore County Police Department, to prevent, and/or redress discrimination, disability discrimination, retaliation, between 2000 and the present.*

**ANSWER 13:** *See* Answer to Interrogatory 12.

**INTERROGATORY 14:** *Describe in detail all policies, procedures, standards, guidelines, operating procedures and directives, of Baltimore County and the Baltimore County Police Department, relating to the issues of employees' or police officers' fitness for duty, for inquiring into any employee's or police officer's medical condition, impairment or disability, and for ordering or compelling employees or police officers to submit to fitness for remedy, or duty or other medical inquiries, evaluations, examinations or testing, in effect between 2000 and the present.*

**ANSWER 14:** *See* Answer to Interrogatory 12.

**INTERROGATORY 15:** *Describe in detail all policies, procedures, standards, operating procedures and directives, of Baltimore County and the Baltimore County Police Department, relating to the issuer of ordering or compelling employees or police officers to disclose of authorize disclosure of medical records, in effect between 2000 and the present.*

**ANSWER 15:** *See* Answer to Interrogatory 12.

-15-

INTERROGATORY 16: *Describe in detail all policies, procedures, standards, operating procedures, training and directives of the Baltimore County Police Department, relating to the need to follow orders and the potential consequences and disciplinary action for refusing to obey an order, in effect between 2000 and the present.*

**ANSWER 16:** *See* Answer to Interrogatory 12.

INTERROGATORY 17: *Describe in detail all policies, procedures, standards, operating procedures, training and directives of the Baltimore County Police Department, relating to testifying under oath and the potential consequences and disciplinary action for failing to comply with a duly issued subpoena or failing to testify truthfully under oath, in effect between 2000 and the present.*

**ANSWER 17:** *See* Answer to Interrogatory 12.

INTERROGATORY 18: *Identify all documents, including but not limited to medical records, reviewed by any physician or healthcare provider in connection with ordering plaintiff Blake to submit to fitness for duty examination(s), EEG, or any medical testing, between August 2006 and the present, and at any time during his employment.*

**ANSWER 18:** Pursuant to Fed. R. Civ. P. 33(d), responsive documents are produced.

INTERROGATORY 19: *Identify all expert witnesses who may be called to testify at trial, state their opinions and the basis for each opinion, and provide the financial terms for compensation in connection with their services as an expert.*

**ANSWER 19:** Pursuant to Fed. R. Civ. P. 33(d), responsive documents are produced.

INTERROGATORY 20: *Identify all written or recorded statements in your possession relating to the allegations of plaintiff Blake's Complaint, including but not limited to any statements of*

-16-

*plaintiff Blake or others, including the date, the purpose of the statement, and the present custodian of the statement.*

**ANSWER 20:** Recorded statements would be confined to the Board of Appeals hearing concerning Officer Crumbacker, the transcript of which defendant is producing and invokes Rule 33(d) as its response.

**INTERROGATORY 21:** *Identify all alleged admissions or statements against interest you contend were made by plaintiff.*

**ANSWER 21:** Any admissions would be either in the Board of Appeals hearing transcript, medical records, or in one or two documents contained in plaintiff's personnel file about medical condition or history.

**INTERROGATORY 22:** *Identify all persons, individual, corporate or governmental, who have investigated on your behalf the facts giving rise to the Complaint or plaintiff's alleged damages.*

**ANSWER 22:** Jeffrey Cook.

**INTERROGATORY 23:** *State all facts supporting your affirmative defenses to the Complaint.*

**ANSWER 23:** The defense of estoppel and waiver both involve evaluating the actions of the plaintiff. He had a fitness for duty evaluation on September 5, 2006. He has declined to comply with the request for an EEG which was sought by the evaluating doctor as a follow up to the 9/5/06 examination so that a proper evaluation could be performed. Thus, he went to the former but not the latter. This is a relinquishment of a right he now claims. Baltimore County relied on the initial 9/5/06 evaluation to request the follow-up

EEG. And it is for the "invasive" EEG for which the County is being sued. By going to the 9/5/06 evaluation, Baltimore County acquired a corresponding right to seek a requested follow up. Moreover, it is legitimate to believe that the initial evaluation is more intrusive than an EEG. The unfairness to the County could be the fitness for duty initial evaluation concludes one thing "favorable" to plaintiff but the EEG could disclose something "unfavorable" to plaintiff. It unfairly allows plaintiff to "pick the good and hide the bad" if you will.

**INTERROGATORY 24**: *Identify all persons who participated in any manner in answering these interrogatories.*

**ANSWER 24**: Major Randall Russin, Major Jeffrey Caslin, Major Larry Suther, Captain Kate Meeks-Hall, Captain Gordon Skinner, Lieutenant Mike Howe, Colonel Johnson, Colonel Ward, Colonel Kelly, Lieutenant Eastridge, Bob Wickless, Theresa S. Hill.

**INTERROGATORY 25**: *State the name, and present home and business address, of all persons not previously identified herein, having personal knowledge as to the facts giving rise to the Complaint or as to your defenses to the Complaint, including all those who participated in any meeting or the decisions regarding plaintiff Blake's medical status, between August 2003 and the present.*

**ANSWER 25**: John E. Beverungen and Suzanne T. Berger.

### OATH

I, Beverly Dietz, am duly authorized to execute these Answers to Interrogatories under oath on behalf of Baltimore County, Maryland. The information set forth in these

Answers was collected by others and such information is not necessarily within my personal knowledge. However, on behalf of Baltimore County, Maryland, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information, and belief.

_____
Beverly Dietz

__4/16/07_____
(Date)

                         Respectfully submitted,

                         JOHN E. BEVERUNGEN
                         County Attorney

                         _____
                         JEFFREY GRANT COOK
                         Assistant County Attorney
                         Courthouse, Second Floor
                         400 Washington Avenue
                         Towson, Maryland 21204
                         410-887-4420

                         *Attorneys for*
                         *Baltimore County Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 16th day of April, 2007, a copy of Baltimore County's Answers to Interrogatories was mailed, postage prepaid, to:

Kathleen Cahill, Esquire
The Law Offices of Kathleen Cahill, LLC
15 East Chesapeake Avenue
Towson, Maryland 21286

*Attorney for Plaintiff*

_____
JEFFREY GRANT COOK