IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WILLIAM BLAKE, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. L-07-50 |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

## **MEMORANDUM**

This is an action brought under both the Americans with Disabilities Act (the "ADA") and 42 U.S.C. § 1983.  On April 24, 1996, Plaintiff William Blake—a Baltimore County Police Officer for over twenty years—had what was later diagnosed as a seizure.  The seizure occurred shortly after Blake reported to his precinct.  He was treated for the seizure and cleared to return to full duty effective May 10, 1996.  In the thirteen years following the episode, Blake has experienced neither similar symptoms nor any other seizure-like events.

In the summer of 2006, Blake learned that a fellow officer, Philip Crumbacker, had suffered a seizure on the job and was appealing the police department's order compelling his involuntary disability retirement.  At Crumbacker's request, Blake appeared as a witness at Crumbacker's hearing before the Baltimore County Board of Appeals on August 31, 2006.  During the hearing, Blake described his 1996 seizure, confirmed that his supervisors were aware of the episode, and testified that he had fully performed his duties since then without incident or further reevaluation.

The day after Blake testified, Police Chief Terrence Sheridan ordered him to submit to fitness-for-duty medical examinations. Over his objection and reservation of rights, Blake reported for the mandatory evaluation on September 5, 2006. The police department's examining physician found Blake fit for duty, but nonetheless recommended that Blake undergo an electroencephalogram ("EEG"). On December 14, 2006, Sheridan ordered Blake to appear for this additional test. Following that order, Blake filed the instant suit.

Blake's Second Amended Complaint asserts two causes of action. Count I states a claim under 42 U.S.C. § 1983, asserting that requiring Blake to submit to a fitness for duty examination and EEG violates his constitutional right to privacy. Count II alleges that Defendants' conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (the "ADA").

On July 1, 2008, this Court issued an opinion containing two primary rulings. First, the Court issued a preliminary injunction prohibiting Defendants from requiring Blake to submit to further medical evaluation, including an EEG. Second, the Court partially granted and partially denied Defendants' motion for summary judgment on Blake's § 1983 claims.

Now pending are: (i) Plaintiff's Motion for Summary Judgment on Second Amended Complaint, and (ii) Defendants' Motion for Summary Judgment as to the Remainder of Count 1. The Court heard oral argument on the parties' motions on July 1, 2009. For the reasons that follow, the Court will (i) DENY Plaintiff's motion, (ii) GRANT Defendants' motion, and (iii) SCHEDULE a telephone conference to discuss the next phase of the case.

**I.      FACTUAL BACKGROUND**

      A.      <u>Blake's Employment History and Seizure</u>

Blake joined the Baltimore County Police Department on August 5, 1987. He has been a detective since September 1994 and a member of the criminal intelligence unit since June 1999. On the morning of April 24, 1996, Blake reported to work at the Cockeysville precinct. Shortly after arriving at his desk, he became nauseated and dizzy, and briefly lost consciousness. He was transported by ambulance to the hospital, where he was joined by his commanding officer and other supervisors. Blake was evaluated by emergency room physicians and discharged later that day with instructions to follow up with neurologist Howard Moses. Dr. Moses examined Blake on or about May 8, 1996 and cleared Blake to return to full duty with no further treatment.[1]

After submitting the necessary paperwork documenting his absence and neurologist's clearance, Blake returned to duty on May 10, 1996. Blake has not experienced another seizure, or any similar symptoms, since his return to the police force and—prior to 2006—his fitness for duty was never questioned by the Baltimore County Police Department.

      B.      <u>Crumbacker's Seizures and Forced Disability Retirement</u>

On September 6, 2004, Officer Crumbacker had a seizure while behind the wheel of his police car. At the time he lost consciousness, Crumbacker was responding to an emergency call and was driving at a high rate of speed along a heavily traveled highway. His car crossed three lanes of traffic before crashing into a construction site.

Because Crumbacker's seizure was not his first, his physicians diagnosed him with a seizure disorder and prescribed medication. Although Crumbacker expressed his wish to remain

---

[1] Although any medical records associated with this evaluation have since been destroyed, Blake testified during his deposition that he recalls Dr. Moses administering an EEG and reviewing the results of an MRI Blake had prior to his follow-up appointment.

on the police force, the police department applied for and was granted disability retirement for Crumbacker in March 2006.[2] Crumbacker appealed this ruling to the Baltimore County Board of Appeals.

Upon learning of his fellow officer's forced retirement, Blake sought out Crumbacker to offer his support. Blake related the story of his 1996 seizure and noted that he had performed his duties without incident or interference from the police department since the episode. When Crumbacker's attorney learned of this conversation, he subpoenaed Blake to testify at Crumbacker's Board of Appeals hearing.

At the August 31, 2006 hearing, Blake described his 1996 symptoms and subsequent diagnosis of a temporal lobe seizure. He noted that the police department had not required him to be reevaluated since his neurologist approved his return to the police force ten years prior, other than to retest his qualifications on the firearms range immediately following his return to work. Blake also confirmed that his supervisors were aware of this incident. Also appearing at Crumbacker's hearing was Officer Jeffrey Ward, who testified that he, too, had experienced a seizure during his employment with the Baltimore County Police Department.[3]

C.      Defendants' Response

Shortly after Crumbacker's hearing concluded, Chief of Police Terrence Sheridan received a phone call from the Baltimore County attorney representing the Board of Appeals. During their conversation, the attorney informed Sheridan that Blake and Ward had testified on

---

[2] Article 5 of the Baltimore County Code establishes the Employee Retirement System ("ERS") for the purpose of providing retirement allowances and other benefits to Baltimore County employees. The Board of Trustees of the ERS voted to retire Crumbacker on disability based on the determination that he was "mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that [he] should be retired." See Baltimore County Code § 5-1-221.

[3] A third officer, Lieutenant Mike Lauenstein, was also identified during the hearing as having experienced a seizure.

behalf of Crumbacker, and had disclosed their prior seizures.  In response, Sheridan convened a meeting with police department leadership and ordered that the officers be required to submit to fitness for duty examinations.

During his deposition, Sheridan testified that he did not review Blake's personnel file or performance evaluations prior to ordering Blake to have a fitness for duty examination.  He also did not review any medical records concerning Blake's 1996 seizure, nor did he seek the advice of a physician as to the potential significance of Blake's medical history.  Nor did he question Blake about his testimony.  Instead, Sheridan testified that he ordered the fitness for duty examinations based on (i) Crumbacker's incident , (ii) Blake's testimony that he had experienced a seizure in 1996, and (iii) police officers' general "incentive to underreport the number of seizures" they have had.[4]

By letter dated September 1, 2006, Sheridan ordered Blake to appear for a "workability examination" scheduled by the police department with Dr. Peter Oroszlan.  The letter also instructed Blake to bring all medical records and test results that would assist the examining physician in making his determination.

D.    Blake's Fitness for Duty Examination

On September 5, 2006, Blake appeared as scheduled for his fitness for duty examination.[5] After reviewing Blake's medical history and conducting a physical examination, Oroszlan drafted a six page report summarizing his findings.  In his report, Oroszlan declared Blake fit for duty.  Notwithstanding that declaration, Oroszlan also stated that, "it is reasonable to request that Blake at least undergo a random electroencephalogram even if the yield is expected to be low."

---

[4]  These reasons were also stated in Sheridan's affidavit, dated March 4, 2009.

[5]  In authorizing the release of his medical records relating to his 1996 seizure and in appearing for his workability examination, Blake expressly reserved his rights under the ADA.

By letter dated December 14, 2006, Sheridan ordered Blake to appear for an EEG scheduled by the police department for December 20, 2006. After postponing the scheduled test, Blake filed this lawsuit in Maryland state court on January 8, 2007. Defendants timely removed to this Court.

### E. The Instant Litigation

Following a hearing on April 4, 2008, this Court issued a written opinion containing two primary rulings. First, the Court issued a preliminary injunction prohibiting Defendants from requiring Blake to submit to further medical evaluation, including an EEG. Second, the Court partially granted and partially denied Defendants' motion for summary judgment on Blake's § 1983 claims. In particular, the Court granted summary judgment to Chief Sheridan on the ground that he enjoyed qualified immunity from suit. The remaining § 1983 claims—in addition to the ADA claims—were tabled until the completion of discovery.

Discovery is now complete and the parties have filed renewed motions for summary judgment. In his motion, Blake seeks summary judgment for both his ADA and § 1983 claims. In its motion, Baltimore County seeks summary judgment only as to the § 1983 claim. For the reasons stated below, the Court DENIES Blake's motion and GRANTS the County's motion. Accordingly, Blake's § 1983 claim is dismissed and his ADA claims become the sole piece remaining in the case.

## II. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**III. ANALYSIS**

As an initial matter, it should be noted that—contrary to Blake's assertions—a court's preliminary findings, made when granting a preliminary injunction, are not binding at the summary judgment stage. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) (holding that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); Attorneyfirst, LLC v. Ascension Entm't, Inc.,144 Fed. Appx. 283, 287-88 (4th Cir. 2005) (same). As such, the prior opinion in this case cannot form the basis of a grant of summary judgment. Instead, the Court freshly considers each of Blake's claims.

    A.    <u>Blake's ADA Claims</u>

Blake's complaint contains two separate ADA claims; (i) a claim that Blake was subject to a prohibited medical examination, and (ii) a retaliation claim.[6] The Court will address the claims seriatim.

---

[6] Baltimore County argues that Blake failed to plead an ADA retaliation complaint. Blake's Complaint clearly states, however, that the County's alleged adverse actions were "undertaken in retaliation for [Blake's] participation in the August 31, 2006 hearing." Given that language, the Court will consider Blake's retaliation claim.

1.      Prohibited Examination

Blake's first ADA claim contends that Baltimore County required him to undergo a prohibited medical examination.  The ADA, in relevant parts, provides that "a covered entity shall not require a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  While case law concerning this provision is sparse, other Circuits have clarified what is required for a medical examination to be "job related and consistent with business necessity."  See, e.g., Conroy v. N.Y. State Dep't of Corr. Serv., 333 F.3d 88 (2d Cir. 2003); Tice v. Centre Area Transp. Auth., 247 F. 3d 506 (3d Cir. 2001).  In the most helpful opinion, the Second Circuit held that an employer must prove: (i) "that the asserted 'business necessity' is vital to the business," (ii) "that the examination . . . genuinely serves the asserted business necessity," and (iii) "that the request is no broader or more intrusive than necessary."  Conroy, 333 F. 3d at 97-98.

Because Blake filed for summary judgment with respect to this claim, he bears the burden of proving that no fair-minded jury could find that the fitness for duty examination was job related and consistent with business necessity.  He is unable to do so here.  While Blake presents a strong case, a fair-minded jury could find that the fitness for duty examination was job-related and consistent with business necessity.  Police Chief Sheridan testified that his decision to require Blake to undergo a fitness for duty exam was based on the risks caused by on-duty officers experiencing seizures.  In particular, Sheridan pointed to Officer Crumbacker's experience— Officer Crumbacker's seizure caused his police car to cross three lanes of heavy traffic and crash into a construction site—and the risks that a similar experience would pose for the health and safety of both fellow officers and the general public.

Based on that testimony, a fair-minded jury could conclude that Sheridan had genuine concerns that public safety would be endangered if Blake suffered an additional seizure. Public safety is one of the core concerns of any police department and taking steps to ensure it is both "job related and consistent with business necessity." Similarly, taking steps to ensure the safety of fellow officers meets the statutory test. See, e.g., Ward v. Merck & Co., Inc., 226 Fed. Appx. 131, 140 (3d Cir. 2007) (holding that "business necessities may include ensuring that the workplace is safe").[7] Because a fair-minded jury could find that Blake's fitness for duty exam was job related and consistent with business necessity, Blake is not entitled to summary judgment on his first ADA claim.

  2.  Retaliation

Blake's second ADA claim alleges that Baltimore County required him to undergo a fitness for duty examination in retaliation for his participation in the Crumbacker hearing. Under the ADA, an employer is prohibited from discriminating "against any individual because such individual . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that he engaged in conduct protected by the ADA, (2) that he suffered an adverse employment action subsequent to engaging in the protected conduct, and (3) that there was a causal link between the protected activity and the adverse action." See Freilich v. Upper Chesapeake Health, Inc., 313 F. 3d 205, 216 (4th Cir. 2002). In order to succeed on his motion, Blake must demonstrate that a fair-minded jury would *necessarily* find that each of those elements existed. Again, he is unable to do so.

---

[7] In addition, as stated earlier, Sheridan's concern that Blake could suffer another seizure was based both on Blake's testimony during the Crumbacker hearing, as well as police officers' tendency to underreport seizures and seizure-like episodes. A fair-minded jury could find that that evidence justified Sheridan's belief that Blake could experience another seizure in the future.

Assuming, *arguendo*, that Blake engaged in protected conduct, and that the fitness for duty exam constituted an adverse employment action, Blake cannot prove that a fair-minded jury would necessarily find a causal link between the protected activity and the adverse action. As noted earlier, Chief Sheridan testified that his decision was based on concerns for both officer and public safety. A fair-minded jury could reasonably find that those concerns—rather than any retaliatory intent—were responsible for Sheridan's requiring Blake to take a fitness for duty exam. Accordingly, Blake is not entitled to summary judgment for his ADA retaliation claim.

B.   § 1983

Blake's Second Amended Complaint also includes a § 1983 claim contending that Baltimore County violated Blake's constitutional right to privacy by mandating that he submit to a fitness for duty exam.[8] As an initial point, it bears mention that Blake possesses a constitutional right to the privacy of his medical records. See In re: Search Warrant, 810 F.2d 67, 71 (3d Cir. 1986) (holding that "medical records are clearly within this constitutionally protected sphere [of individual liberty]"). Nonetheless, because he is unable to establish that the execution of an official policy or custom deprived him of that right, Blake's § 1983 claim must be dismissed. Accordingly, the Court will deny Blake's motion and grant the County's motion to dismiss the § 1983 claim.

Under the framework established in Monell v. Department of Social Services, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. at 694. Instead, a § 1983 plaintiff must identify a specific policy or

---

[8] The Court's July 1, 2008 opinion found that the §1983 claims against Chief Sheridan should be dismissed on qualified immunity grounds. Blake now urges the Court to reconsider that decision. Having reviewed Blake's papers, as well as the July 1, 2008 opinion, however, the Court sees no reason to alter its initial decision. As such, the claims against Sheridan remain out of the case.

custom of the local government that caused his injury.  See Cortez v. Prince George's County, 31 Fed. Appx. 123, 128 (4th Cir. 2002).  Isolated incidents of unconstitutional activity are insufficient to establish liability.  See Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985).

In this case, Blake is unable to show that Baltimore County had either a policy or custom requiring police officers to undergo fitness for duty examinations and turn over personal medical records.  Quite the opposite, the record evidence establishes that Chief Sheridan's decision to require an examination was an isolated incident not tied to any Baltimore County directive. Sheridan neither carried out an official policy nor acted pursuant to a widely-practiced custom of Baltimore County.  Rather, he engaged in a single incident of allegedly unconstitutional activity. Absent proof that the incident was caused by an existing unconstitutional policy or custom, Baltimore County cannot be held responsible under § 1983.  See Tuttle, 471 U.S. at 824.  Thus, even if the County violated one of Blake's constitutional rights, it is not liable and Blake's § 1983 claim must be dismissed.

## IV.   CONCLUSION

For the reasons stated, the Court will, by separate order, (i) DENY Plaintiff's Motion for Summary Judgment on Second Amended Complaint, (ii) GRANT Defendants' Motion for Summary Judgment as to the Remainder of Count 1, and (iii) SCHEDULE a telephone conference to discuss the next phase of the case.[9]  The telephone conference is scheduled for Wednesday, October 7 at 2:30 P.M.  Plaintiff's counsel is directed to initiate the telephone conference.

---

[9] One issue that should be discussed in that telephone conference is whether the EEOC has issued its Notice of Right to Sue.  When the Court was last provided an update as to the status of Blake's ADA claims, the EEOC had referred the case to the Department of Justice for possible further proceedings and had not yet issued the Notice of Right to Sue.

Dated this 30th day of September, 2009.

                                                                    /s/
                                              Benson Everett Legg
                                              Chief Judge